UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARIEA VANDEMARK,

                              Plaintiff,

v.                                                               6:03-CV-0587
                                                                 (LEK/GHL)

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

PORTNOY, MARCUS LAW FIRM              IRWIN M. PORTNOY
*Counsel for Plaintiff*
254 Route 17K
Newburgh, New York 12550

HON. GLENN T. SUDDABY                    WILLIAM H. PEASE, ESQ.
United States Attorney for the                 Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION[2]

I.       BACKGROUND

         A.       Procedural History

         Plaintiff filed an application for disability insurance benefits ("DIB") on March 31, 1997.

---

[1]  The complaint named Jo Anne B. Barnhart as Defendant, then the Commissioner of Social Security.  On February 12, 2007, Michael J. Astrue assumed that position.  Therefore, he shall be substituted as the named Defendant pursuant to Fed. R. Civ. P. 25(d)(1).

[2]  This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

(Administrative Transcript ("T") at 100-102.)[3]  The application was denied initially and on

reconsideration on July 10, 1997 and January 26, 1998, respectively.  (T. at 68-69, 72-76, 82-85.)

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on

March 4, 1999.  (T. at 27-43.)  On March 25, 1999, the ALJ issued an unfavorable decision.  (*See*

T. at 22.)

　　　　Upon Plaintiff's appeal, the Appeals Council remanded the case to the ALJ on June 18,

2001.  (T. at 22-25.)  The Appeals Council instructed the ALJ to consider that Plaintiff had a

"concurrent [DIB] and Supplemental Security Income medical determination based on [a]

protective filing of February 7, 1995 . . . ;" to obtain any medical records related to treatment of

Plaintiff's back from October 1991 to June 1997; to consider opinions rendered by treating,

examining, and nonexamining sources, and to explain the weight given to such opinions; to

evaluate further Plaintiff's subjective complaints and provide rationale; to consider further

Plaintiff's maximum residual functional capacity ("RFC") and to provide appropriate rationale

with specific references to evidence of record; and, if warranted, to obtain evidence from a

vocational expert.  (T. at 23-24.)  On October 26, 2001, a hearing before the ALJ was held.  (T. at

44-67.)  On January 25, 2002, ALJ Carl E. Stephan issued a decision finding that Plaintiff was not

disabled.  (T. at 10-17.)  Plaintiff appealed to the Appeals Council, and the ALJ's decision became

the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for

---

[3]  The protective filing date of Plaintiff's DIB application is unclear, as the ALJ stated that Plaintiff filed her DIB application on February 7, 1997 while the Appeals Council established a protective filing date of February 7, *1995*.  (T. at 10, 23.)

review on March 28, 2003.  (T. at 2-3.)  Plaintiff commenced this action on May 13, 2003.[4]  (Dkt.
No. 1.)

>   **B.      The Contentions**

Plaintiff's briefs[5] set forth the following claims:

(1)  The ALJ erred in omitting certain material from the administrative record.  (Dkt. No. 11
at 13-14.)

(2)  The ALJ erred in failing to explain why Plaintiff's condition did not meet or equal a
listed impairment.  (Dkt. No. 11 at 21; Dkt. No. 28 at 4.)

(3)  The ALJ erred in failing to give controlling or significant weight to the opinions of
treating sources.  (Dkt. No. 11 at 17-21.)

(4)  The ALJ erred in evaluating Plaintiff's credibility.  (Dkt. No. 11 at 21-23.)

(5)  The ALJ erred in determining that Plaintiff could perform sedentary work.  (Dkt. No.
11 at 14-17.)

(6)  The ALJ erred in relying on the vocational expert's testimony.  (Dkt. No. 11 at 23-25;
Dkt. No. 28 at 4-5.)

(7)  The Court should remand the matter pursuant to sentence six of 42 U.S.C. § 405(g) in
light of new and material evidence.  (Dkt. No. 19 at 1-5.)

---

[4]  The Court notes that Defendant was ordered to submit a complete administrative transcript.  (Dkt. No.
24.)  Defendant submitted a supplemental administrative transcript on September 20, 2006.  (Dkt. No. 25.)  Plaintiff
then requested permission to file a supplemental brief, which the Court granted.  (Dkt. Nos. 26, 27.)  Plaintiff filed a
brief on October 10, 2006.  (Dkt. No. 28.)

[5]  Plaintiff's contentions are drawn from her briefs.  *See* Dkt. No. 11 (brief in support of complaint); Dkt.
No. 18 (reply brief ); Dkt. No. 19 (brief in support of motion for remand); Dkt. No. 23 (reply brief); and Dkt. No. 28
(subsequent supplemental brief ).  The Court also notes that Plaintiff's briefs contain numerous footnotes of some
length, which at times comprise more than half of a page.  Local Rule 10.1, which sets forth the form required of all
pleadings, motions, and other documents presented for filing, provides, *inter alia*, that "extensive footnotes may not
be used to circumvent page limitations."  N.D.N.Y.L.R. 10.1(a).

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed. (Dkt. No. 15.) He also contends that remand pursuant to sentence six of 42 U.S.C. § 405(g) is unwarranted because the additional evidence does not constitute material evidence. (Dkt. No. 20.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income ("SSI") benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520 (2005). "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b),

-4-

416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[1] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[1]  [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

**B.      Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be

supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.   THE PLAINTIFF

Plaintiff was born on January 10, 1968.  (T. at 100.)  She is a high school graduate.[6]  (T. at 32.)  She previously worked as an assembly line worker, driver, cashier, and chambermaid.  (T. at

---

[6]  Plaintiff indicated in a submission that she completed "manicuring school" in September of 1992.  (T. at 155.)  However she later testified that she enrolled in the school, but did not attend.  (T. at 62.)

32-35, 52, 167.)  Plaintiff alleges disability due to a "back injury."  (T. at 137.)

IV.    THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since the alleged onset date of October 1, 1991 (T. at 11, 16); (2) Plaintiff had a "severe musculoskeletal impairment," which failed to meet or equal a listed impairment (T. at 12, 16); (3) Plaintiff retained the RFC to "lift and carry ten pounds frequently and twenty pounds occasionally; occasionally climb ramps and stairs; perform no climbing of ladders, ropes or scaffolds; occasionally stoop, crouch and crawl; sit for a minimum of four hours; and stand for four hours with the option to sit and stand as needed" (T. at 16); (4) Plaintiff could not perform her past relevant work as a driver and cashier (T. at 12, 16); and (5) Considering the testimony of a vocational expert, the ALJ found that Plaintiff was not disabled.  (T. at 16.)

V.    DISCUSSION

A.    Whether The ALJ Erred in Omitting Certain Material from The Administrative Record

1.    Audibility of Administrative Hearing Testimony

Plaintiff argues that the transcript of the administrative hearing contained "quite a number" of inaudible portions of testimony, which she claims constitute a significant omission in the record. (Dkt. No. 11 at 13-14.)  Defendant claims that there were few inaudible portions in the transcript; that the context of the testimony generally clarified the inaudible testimony; that Plaintiff's testimony was complete; and that the ALJ's decision "demonstrates that he heard [P]laintiff's testimony." (Dkt. No. 15 at 5-6.)

It appears that Plaintiff is referring to the following portions of the transcript from the

October 26, 2001 hearing in which she discussed her functional limitations:

> Plaintiff's Attorney: What happens if you stand, sit for more than 20 minutes?
> Plaintiff: My right leg starts to burn, my foot starts to tingle and go numb from
> (INAUDIBLE) and I have pain across the entire lower back and it goes up into the
> spine about eight inches.
>
> . . . .
> Plaintiff's Attorney: Are you able to bend at the waist?
> Plaintiff: Only (INAUDIBLE) I can't bend very far.
>
> Plaintiff's Attorney: If you were walking and dropped something on the ground,
> would you be able to pick it up?
> Plaintiff: No.
>
> . . . .
> Plaintiff's Attorney: Do you have any other medical problems or symptoms besides
> the back and leg problems you've just discussed?
> Plaintiff:  I have a stomach problem that I'm taking a prescription for.
>
> . . . .
> Plaintiff's Attorney:  And what is the problem?
> Plaintiff:  I have acid reflux disease and I have (INAUDIBLE)
>
> Plaintiff's Attorney: Any other medical problems that we haven't discussed?
> Plaintiff: (INAUDIBLE)
>
> . . . .
> ALJ: Change diapers?
> Plaintiff: No.
>
> ALJ: You have a two-year-old, and you don't change diapers?
> Plaintiff: No, I (INAUDIBLE)
>
> ALJ: So you never change diapers?
> Plaintiff: When he was born I did in the hospital, that was it.
>
> . . . .
> ALJ: What do you do with the baby?
> Plaintiff: I usually sit with him on the couch or in the bed.  He sits next to me, and I
> read him a book or he sits on my lap (INAUDIBLE) then I lay down and he lays down
> with me.

ALJ: That's all you do all day, lie down?
Plaintiff: Pretty much, yes.

(T. at 56, 59-60.)

The Court notes that the burden of proof lies with the claimant to show that his or her

impairment(s) prevent a return to previous employment (Steps One through Four).  *Berry v.*

*Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  In this case, Plaintiff, who presumably knows

generally the content of the omitted testimony, has failed to disclose it.  She could have, again at

least generally, "filled in the blanks" so that the Court could assess the weight and importance of the

omitted testimony.  She did not do so; rather her argument consists of one sentence, with no citation

to the record, in which she claims that the inaudible portions of the testimony occurred when she

"tried to provide explanations for the effect of pain on her ability to function."  (Dkt. No. 11 at 14.)

This bald allegation is insufficient to prove that the ALJ erred.  However, the Court is recommending

remand for other reasons.  *See infra* Part V.B-E.  If it is determined that, in light of these other

reasons, a new hearing is necessary, the Court assumes that it will be more accurately transcribed.

*See Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996) (finding that without the benefit of the complete

testimony of the only medical expert, the bases for the ALJ's conclusions were "lost to the ALJ, the

Appeals Council, the district court, and now to us.") (citations omitted); *Antonetti v. Barnhart*, 399

F. Supp. 2d 199, 202 n.5 (W.D.N.Y. 2005) (finding that remand was required so that a new hearing

can be held and more accurately transcribed where the "vast majority" of inaudible responses were

from the plaintiff).

### 2.    Legibility of Documents

Plaintiff argues that the record contains illegible documents, which she claims constitute a

significant omission in the record.  (Dkt. No. 11 at 14.)  She points to various documents which "relat[e] to her statements about how her condition affected her," as well as records from Newburgh Physical Therapy Center and reports from "two Agency review Physicians."  *Id.*  Defendant essentially contends that the documents are legible.  (Dkt. No. 15 at 6-7.)

A review of the documents in question reveals that they are legible.  (*See* T. at 186-188, 193, 195-217, 225, 228, 239-240.)  Moreover, as noted by Defendant, the record contains typed progress notes from Newburgh Physical Therapy Center which summarize Plaintiff's treatment and progress. (T. at 199, 205, 207-209, 213.)  In light of the foregoing, this claim is unavailing.

### 3.      Prior Decision of The Agency

Plaintiff argues that the ALJ failed to obtain "the prior decision to award benefits," which she claims resulted in a significant omission in the record.  (Dkt. No. 11 at 14.)  She claims that the prior decision was "procedural evidence" that was "at least relevant" in demonstrating a longitudinal record, as well as whether and when medical improvement occurred.  *Id.*  Defendant claims that the prior decision is irrelevant to the present matter.  (Dkt. No. 15 at 7-8.)

It appears that Plaintiff is referring to a prior decision that was rendered by the Commissioner on February 27, 1992 which awarded her a closed period of disability from June 26, 1989 to July 21, 1991.  (*See* T. at 22, 70.)  However, the focus of the present matter is whether ALJ Stephan applied the correct legal principles and whether substantial evidence supports his decision rendered on January 25, 2002.  Therefore, this claim is unavailing as the prior decision is not relevant.

### 4.      Evidence of Mental Illness

Plaintiff argues that the ALJ failed to develop evidence of mental illness, which she claims resulted in a significant omission in the record.  (Dkt. No. 11 at 14.)  For support she notes that she

was prescribed anti-depressant medication.  *Id.*  Defendant argues that Plaintiff never "voice[d] any symptoms of depression or other psychological difficulties to any physician" and did not testify that she experienced symptoms of depression.  (Dkt. No. 15 at 8.)

An ALJ's obligation to develop fully the record is not limited to *pro se* cases, but applies even where, as here, the claimant was represented at the hearing.  *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *Smith v. Bowen*, 687 F. Supp. 902, 906 (S.D.N.Y. 1988).  However, as noted, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four).  *Berry*, 675 F.2d at 467.

Here, Plaintiff's mere allegation that the ALJ erred by failing to develop evidence of mental illness simply because she was prescribed anti-depressant medication, without citation to the record, is insufficient to establish such a duty.  However, because the Court is recommending remand for other reasons, *see infra* Part V.B-E, the Court recommends remand on this issue as well.  On remand, the ALJ should develop the record fully with regard to whether Plaintiff suffered from a mental illness.

### B.   Whether The ALJ Erred in Failing to Explain Why Plaintiff's Condition Did Not Meet or Equal a Listed Impairment

Plaintiff argues that the ALJ erred in failing to explain why Plaintiff's condition did not meet or equal a listed impairment.  (Dkt. No. 11 at 21, Dkt. No. 28 at 4.)  Defendant contends that the ALJ "provided the necessary framework of reasoning" in finding that Plaintiff's condition did not meet or equal a listed impairment.  (Dkt. No. 15 at 15-16.)

Pursuant to the third step of the five-step process, if the claimant has an "impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement,

we will find that you are disabled." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2007).  In

cases in which the disability claim is premised upon one or more listed impairments of appendix 1,

"the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a

listed impairment." *Berry*, 675 F.2d at 469.  While a court may be able "to look to other portions of

the ALJ's decision" and to "credible evidence" in finding that his determination was supported by

substantial evidence, the Second Circuit has noted that "[c]ases may arise, however, in which we

would be unable to fathom the ALJ's rationale in relation to evidence in the record . . . . In such

instances, we would not hesitate to remand the case for further findings or a clearer explanation for

the decision." *Id.* (citations omitted).  Thus, while an ALJ is not obligated to address specifically

each piece of evidence in his decision, *Jones v. Barnhart*, No. CV-04-2772, 2004 WL 3158536, at *6

(E.D.N.Y. Feb. 3, 2004), he is not excused from addressing an issue central to the disposition of the

claim.  *See Ramos v. Barnhart*, No. 02 Civ. 3127, 2003 WL 21032012, at *10 (S.D.N.Y. May 6,

2003) (citing, *inter alia*, *Ferraris*, 728 F.2d at 587 ("We of course do not suggest that every conflict

in a record be reconciled by the ALJ or the Secretary but we do believe that the crucial factors in any

determination must be set forth with sufficient specificity to enable us to decide whether the

determination is supported by substantial evidence.")).

In his decision, the ALJ summarized the medical evidence and then made the following

finding:

> Although the claimant has established that she suffers from a severe musculoskeletal
> impairment, secondary to a history of back pain and surgery, said impairment fails to
> meet or equal the level of severity of any disabling condition contained in Appendix
> 1, Subpart P of Social Security Regulations No. 4.

(T. at 12.)

In making the foregoing finding, the ALJ failed to set forth a supporting rationale.  Moreover, the Court has looked to other portions of the ALJ's decision and is unable to conclude that his determination was supported by substantial evidence.  *See Berry*, 675 F.2d at 469 (finding that a court may be able "to look to other portions of the ALJ's decision . . . in finding that his determination was supported by substantial evidence . . . .").  Accordingly, the Court recommends remand.  On remand, the ALJ shall set forth a sufficient rationale in support of his decision to find or not to find a listed impairment.[7]

## C.   Whether The ALJ Erred in Failing to Give Controlling or Significant Weight to the Opinions of Treating Sources

The medical opinions of a treating physician[8] are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2007).  In *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2).  Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts.  Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

---

[7]  To the extent that Plaintiff argues that her condition met or equaled a listed impairment, the Court is unable to make such a determination because it appears that certain records are missing.  *See infra* Part V.C.

[8]  "Treating source" is defined as one's own physician, psychologist, or other acceptable medical source who provides, or has provided, medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient/plaintiff/claimant.  20 C.F.R. § 404.1502 (2007).

*Halloran*, 362 F.3d at 32.

Even if the treating physician's opinion is contradicted by substantial evidence and thus is not controlling, it still may be entitled to significant weight "because 'the treating source is inherently more familiar with a claimant's medical condition than are other sources.'" *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 627 (S.D.N.Y. 2006) (quoting *Gonzalez v. Callahan*, No. 94 Civ. 8747, 1997 WL 279870, at *11 (S.D.N.Y. May 23, 1997) (citing *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988))). However, if not controlling, the proper weight given to a treating physician's opinion depends upon the following factors: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Plaintiff argues that the ALJ erred in failing to give controlling or significant weight to the opinions of her treating sources, C. Davis Sprague, M.D. and Misha Kucherov, M.D. (Dkt. No. 11 at 17-21.) Defendant contends that the ALJ "appropriately found" that a functional assessment completed by Dr. Sprague was not entitled to controlling weight and that an assessment completed by Dr. Kucherov was of limited probative value. (Dkt. No. 15 at 13-14.)

### 1.    Dr. Sprague

In his decision, the ALJ found that Dr. Sprague's opinion was not entitled to controlling weight. (T. at 13.) The ALJ explained as follows:

> In reaching this decision, the [ALJ] notes the reports submitted by Dr. Sprague in which he describes significant functional limitation. In May 2001, he noted that the claimant was capable of lifting no more than ten pounds, required frequent changes in

position, could stand for no more than fifteen minutes and sit for no more than thirty minutes. In July 2001, he noted that the claimant could sit, stand and walk for two hours during an eight-hour workday and lift up to ten pounds. The [ALJ] notes that Dr. Sprague's record of treatment is minimal. The assessment drawn by him is contrary to his own findings on physical examination and the substantial body of evidence in the record. On clinical examination, he notes negative straight leg raising with occasional spasm. He has provided no evidence to suggest that the restrictive assessment imposed by him is predicated on anything more than the claimant's subjective allegations. Accordingly, the [ALJ] does not find that Dr. Sprague's opinion is entitled to controlling weight (20 CFR. 404.1527 and 20 CFR 416.927).

*Id.*

As stated above, an ALJ may give less than controlling weight to the medical opinion of a treating physician provided that he explains his decision. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Here, the ALJ did not afford controlling weight to Dr. Sprague's opinion, thus he was required to consider the factors set forth in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The Court finds that while the ALJ provided a somewhat detailed discussion as to why he found that Dr. Sprague's opinion was not entitled to controlling weight, his rationale was not supported by substantial evidence and he failed to discuss all of the required factors.

Regarding the length of the treatment relationship and frequency of examinations, as well as the nature and extent of the treatment relationship, the ALJ stated that Dr. Sprague's "record of treatment is minimal." (T. at 13.) However, the record indicates that Plaintiff saw Dr. Sprague on at least eight occasions over a span of more than fourteen months. (T. at 261, 264, 265, 267, 268, 270, 273, 274.) Moreover, in an RFC questionnaire completed on July 31, 2001, Dr. Sprague noted that Plaintiff visited on a monthly basis since February of 2000. (T. at 284.) Thus, the record does not

support the ALJ's conclusion that Dr. Sprague's "record of treatment is minimal."

Regarding the medical evidence in support of the opinion, the ALJ stated that Dr. Sprague "provided no evidence to suggest that the restrictive assessment . . . is predicated on anything more than the claimant's subjective allegations."  (T. at 13.)  However, Dr. Sprague noted that he based his opinion on the results of MRI scans of Plaintiff's neck and spine, and noted that Plaintiff visited on a monthly basis.  (T. at 284.)  Therefore the record does not support the ALJ's finding that Dr. Sprague failed to provide supporting evidence.

Regarding the consistency of the opinion with the record as a whole, the ALJ stated that "the assessment drawn by [Dr. Sprague was] contrary to . . . the substantial body of evidence in the record."  (T. at 13.)  However, the ALJ erroneously failed to explain *how* the assessment was contrary to the record as a whole.

Regarding whether the opinion was rendered by a specialist, the ALJ did not discuss this factor.

Regarding any other factors that tend to support or contradict the opinion, the ALJ stated that Dr. Sprague made certain findings as to Plaintiff's functional abilities in May 2001 and then made somewhat different findings in July of 2001.  (T. at 13.)  However, the record before this Court does not include any such findings from May of 2001.  Therefore to the extent that the ALJ found that Dr. Sprague's assessment was "contradictory to his own findings," the record does not support this conclusion as it appears that certain findings made by Dr. Sprague in May of 2001 are missing from the record.[9]

_____

[9]  Indeed Dr. Sprague's office note dated May 10, 2001 suggests that he completed a functional assessment form on or about that day because it was noted that Plaintiff "needs form checked" and that Plaintiff had "chronic

(continued...)

-16-

The Court also notes that while the ALJ presented a somewhat detailed discussion as to why he did not assign controlling weight to Dr. Sprague's opinion, he failed to explain what weight, if any, he assigned to that opinion.  In *Rivera v. Barnhart*, the Court found that the ALJ was obligated "under the Commissioner's regulation to reveal what weight, if any, he gave to the treating source's opinion."  *Rivera v. Barnhart*, Civ. No. 04-6149, 2005 WL 3555501, at *8 (W.D.N.Y. Dec. 9, 2005) (citations omitted).  Here the ALJ erroneously failed to state what weight, if any, he assigned to Dr. Sprague's opinion.

In light of the foregoing, the Court recommends remand for a proper evaluation of Dr. Sprague's opinion and for any missing records to be obtained, particularly any findings describing Plaintiff's functional abilities made by Dr. Sprague in May of 2001.  *See Rosa*, 168 F.3d at 79 (noting that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel . . . .'") (citations omitted).

### 2.    Dr. Kucherov

In his decision, the ALJ found that Dr. Kucherov's opinion was not entitled to controlling weight.  (T. at 13.)  The ALJ explained as follows:

> [T]he [ALJ] does not find that the November 1999 report submitted by Misha Kucherov, M.D. is entitled to controlling weight.  This report, submitted to the Department of Social Services, indicated that the claimant could lift no more than ten pounds, sit for no more than forty-five minutes, and walk for no more than fifteen minutes.  There are no additional records by Dr. Kucherov and little evidence that he is even a treating physician.  He identifies no clinical findings or observations.  He refers to no diagnostic studies.  Accordingly, the [ALJ] finds that this opinion is of

---

[9](...continued)
back injury[,] see papers."  (T. at 264.)  The Court notes that it inexplicably appears that Dr. Sprague's May 2001 findings are mentioned in a later decision rendered by a different ALJ.  *See infra* Part V.G; Dkt. No. 19, Exh. 1 at 3.

limited probative value.

*Id.*

In this case, the Court is unable to determine if Dr. Kucherov was a treating source whose opinion may have been entitled to controlling weight because it appears that records are missing. For instance, the record contains an MRI report sent to Dr. Kucherov in which it notes that on February 4, 1998, "your patient, [Plaintiff,] had an MRI examination of the lumbar spine . . . ."  (T. at 324.)  However, the record does not contain any notes from Dr. Kucherov suggesting that he referred Plaintiff for an MRI examination.  The record also contains a progress note which indicates that Plaintiff saw Dr. Kucherov on August 2, 1999 for low back pain.  (T. at 323.)  At that time, it was noted that Plaintiff's "last visit" was more than a year before, in March of 1998.  *Id.*  However, the record does not contain any notes from March of 1998.

Moreover, Plaintiff testified on March 4, 1999 that she was currently seeing Dr. Kucherov "every two to three months . . . . [s]ince I believe August of [1997]."  (T. at 36, 38.)  She also stated that Dr. Kucherov "believe[d] that there is permanent damage, that I have scar tissue around the nerves.  I do have another herniated disk, and . . . a fusion is necessary."  (T. at 40.)  However, there are no records from Dr. Kucherov reflecting such periodic visits and in which such a proposed treatment plan is set forth.

Further, in an undated submission, Plaintiff indicated that she "[l]ast saw" Dr. Kucherov on January 29, 1998 and had an appointment to see him on February 16, 1998 for the results of an MRI. (T. at 194.)  However, the record does not contain any office notes showing that she visited Dr. Kucherov on these dates.

In light of the foregoing, the Court is unable to conclude that Dr. Kucherov had an ongoing

-18-

treatment relationship with Plaintiff, and thus was a treating source whose opinion may have been entitled to controlling weight, because it appears that records are missing.  The ALJ had a duty to obtain any missing treatment records.  This duty is present even when a claimant is represented by counsel.  *See Rosa*, 168 F.3d at 79.  Therefore, the Court recommends remand for any missing records to be obtained.[10]

### D.    Whether The ALJ Erred in Evaluating Plaintiff's Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2007); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998); S.S.R. 96-7p, 1996 WL 374186 (S.S.A. 1996).  First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) which could reasonably be expected to produce the claimant's pain or other symptoms.  S.S.R. 96-7p, 1996 WL 374186, at *2.  This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms.  *Id.*  If no impairment is found which could reasonably be

---

[10]  To the extent that Plaintiff argues that Dr. Kucherov's opinion was a retrospective medical opinion that was entitled to controlling weight (Dkt. No. 11 at 19-20), the Court is unable to determine whether Dr. Kucherov was a treating physician whose retrospective opinion may have been entitled to controlling weight for the reasons just discussed.  *See Wenk v. Barnhart*, 340 F. Supp. 2d 313, 322 (E.D.N.Y. 2004) (noting that the treating physician rule applies to retrospective diagnoses) (citations omitted).

expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities.  *Id.*  An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled.  *Id.*

However, once an underlying physical or mental impairment(s) which could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities.  S.S.R. 96-7p, 1996 WL 374186 at *2.  Whenever a claimant's statements about the intensity, persistence, and limiting effects of the claimant's pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the claimant's credibility.  *Id.*  A claimant's symptoms will be determined to diminish his/her capacity for basic work activities to the extent that his/her alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.  *Id.*

A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone.  S.S.R. 96-7p, 1996 WL 374186, at *3.  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms;

-20-

(5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

Plaintiff argues that her testimony is credible and that the ALJ erred by selectively applying factors contained in the regulations.  (Dkt. No. 11 at 21-23.)  Defendant argues that the record provides substantial evidence to support the ALJ's finding as to Plaintiff's credibility.  (Dkt. No. 15 at 8-11.)

In his decision, the ALJ found that Plaintiff's subjective complaints were not credible.  (T. at 15.)  In coming to this conclusion, the ALJ did not discuss explicitly whether based on the objective medical evidence, Plaintiff's impairments could not reasonably be expected to produce the pain or other symptoms alleged.  As such, the first step of the two-step analysis of the evidence in the record, required by 20 C.F.R. §§ 404.1529, 416.929, was not addressed.

If the Court were to assume that the ALJ had determined that the first step of the two-step analysis had been met, then the ALJ was required to assess the credibility of Plaintiff's subjective complaints by considering the record in light of the various symptom-related factors set forth in 20

-21-

C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).  In this case, the ALJ's discussion of the factors is not supported by substantial evidence.

Regarding the location, duration, frequency, and intensity of Plaintiff's symptoms, the ALJ noted that Plaintiff testified that she "experiences severe back pain radiating into the left lower extremity.  She notes numbness and tingling in the right foot . . . [and] right leg burning."  (T. at 15.) However, the ALJ failed to discuss that Plaintiff testified that her "complete right leg" periodically becomes numb and that Plaintiff stated that she was unable to "bend very far" and unable to pick up an object on the ground.  (T. at 53, 56.)  Thus, the ALJ failed to discuss fully the location, duration, frequency, and intensity of Plaintiff's symptoms.

Regarding any precipitating and aggravating factors, the ALJ noted that Plaintiff "testified that [her] symptoms are exacerbated by prolonged sitting."  (T. at 15.)  However he failed to note that Plaintiff stated specifically that her pain was aggravated by sitting for "*[m]ore than 20 minutes*." (T. at 55-56 (emphasis added).)  The ALJ also noted that Plaintiff testified that she "estimates that she can stand for perhaps fifteen minutes and walk for ten to fifteen minutes."  (T. at 15.)  However the ALJ failed to note that Plaintiff testified that if she stood or sat for more than twenty minutes, "[m]y right leg starts to burn, my foot starts to tingle and go numb from (INAUDIBLE) and I have pain across the entire lower back and it goes up into the spine about eight inches."  (T. at 56.)  Thus, the ALJ failed to discuss all of Plaintiff's precipitating and aggravating factors.

Regarding the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms, the ALJ incorrectly found that "[a]t [the] hearing, the claimant was unable to identify any adverse side effects" from various medications.  (T. at 15.)  However, Plaintiff testified that her medication caused her to experience sleepiness, as well as difficulty concentrating and remembering.

-22-

(T. at 58.)  Thus, the ALJ's finding as to whether Plaintiff suffered from side effects is not supported by the record.

Regarding any other treatment received to relieve Plaintiff's symptoms and any measures taken by Plaintiff to relieve symptoms, the ALJ noted that Plaintiff underwent lumbar microdiscectomy and physical therapy, and used a TENS unit.[11]  (T. at 11, 15.)  However, he failed to discuss that Plaintiff reported using a "back belt" to support her back, heat compresses, and a "Posturpedic mattress with firm support."  (T. at 36, 42, 55.)  Thus, the ALJ erred by failing to discuss fully any other treatment received to relieve Plaintiff's symptoms and any measures taken by Plaintiff to relieve symptoms.

The Court also notes that the ALJ also found that Plaintiff "sought no treatment, despite allegations of excruciating pain" from October of 1991 to June of 1997.  (T. at 15.)  However, he failed to discuss the possibility that Plaintiff may have been unable to afford treatment.  An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment."  S.S.R. 96-7p, 1996 WL 374186, at *7.  Such explanations may include that "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services."  *Id.* at *8.  Here, Plaintiff's testimony suggests that she did not have health insurance for a period of time.  (T. at 53-54.)  Indeed, she stated that she received pain medication from a family friend "[f]rom . . . December of [1991], until I got medical insurance in October of [1997]."  *Id.*  Moreover, when asked whether

---

[11]  A TENS Unit provides transcutaneous electrical nerve stimulation.  *Dorland's Illustrated Medical Dictionary* 1798 (29th ed. 2000).

she received treatment during the period in question, she stated that, "on occasion I would go to the local hospital, and the doctor would give me a prescription, whatever physician that I saw."  (T. at 49.)  Thus, the ALJ erred by failing to discuss the possibility that Plaintiff may have been unable to afford treatment from October of 1991 to June of 1997.

In light of the foregoing, the Court concludes that the ALJ's credibility determination is not supported by substantial evidence.  Therefore the Court recommends remand for a proper evaluation of Plaintiff's subjective complaints of pain.

E.      Whether The ALJ Erred in Determining that Plaintiff Could Perform Sedentary Work

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. §§ 404.1545(a), 416.945(a) (2007).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, D.J.) (citing 20 C.F.R. §§ 404.1545, 416.945).

To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional capabilities, addressing his or her abilities to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a(b) (2007).  Non-exertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered.  20 C.F.R. § 404.1569a(c); *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  Moreover, "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations."  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990));

-24-

*Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997) ("Commissioner bears the burden of demonstrating the claimant's capacity to perform each of the RFC elements and must proffer specific medical evidence in support of such demonstration.") (citations omitted).

### 1.    Failure to Explain Abilities on Function-by-Function Basis

Plaintiff claims that the ALJ failed to explain Plaintiff's abilities on a function-by-function basis.  (Dkt. No. 11 at 23.)  Defendant argues that the ALJ articulated Plaintiff's "functional abilities in terms of each specific function."  (Dkt. No. 15 at 17-18.)

An RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945."[12]  S.S.R. 96-8p, 1996 WL 374184, at *1 (S.S.A. 1996).  Only then may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy.  S.S.R. 96-8p, 1996 WL 374184, at *1.  Moreover, when determining a claimant's RFC, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588).  Indeed, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g.

---

[12]  The functions in paragraph (b) of sections 404.1545 and 416.945 include "certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching) . . . ."  20 C.F.R. §§ 404.1545(b), 416.945(b).  The functions in paragraph (c) of sections 404.1545 and 416.945 include "certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting . . . ."  20 C.F.R. §§ 404.1545(c), 416.945(c).  The functions in paragraph (d) of sections 404.1545 and 416.945 include "[s]ome medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions . . . ."  20 C.F.R. §§ 404.1545(d), 416.945(d).

daily activities, observations)." S.S.R. 96-8p, 1996 WL 374184, at *7.

In this case, the ALJ found that Plaintiff could not return to her past relevant work as a driver and cashier because that work required "prolonged periods of sitting or standing." (T. at 12.) He then determined Plaintiff's RFC, explaining as follows:

> In reviewing the record, the [ALJ] finds that the claimant has retained the [RFC] to perform the following activities. He notes that the claimant can lift and carry ten pounds frequently and twenty pounds occasionally; can occasionally climb ramps and stairs but should avoid climbing ladders, ropes and scaffolds; can occasionally stoop, crouch, and crawl; can sit for a minimum of four hours and stand for four hours, provided she has the option to sit and stand as needed.

(T. at 12.)

The Court finds that while the ALJ made findings as to some of Plaintiff's physical abilities listed in paragraph (b) of sections 404.1545 and 416.945, he failed to make findings as to other physical abilities, namely her abilities to walk, push, pull, reach, and handle. He also failed to discuss whether Plaintiff was limited in any mental activities listed in paragraph (c) of sections 404.1545 and 416.945, as well as any functions described in paragraph (d) of sections 404.1545 and 416.945. Accordingly, the ALJ erred in this regard. Therefore the Court recommends remand in order for the ALJ to identify Plaintiff's functional limitations or restrictions and assess her work-related abilities on a function-by-function basis, referencing the functions in paragraphs (b), (c), and (d) of sections 404.1545 and 416.945. *See* S.S.R. 96-8p, 1996 WL 374184, at *1. He may then express Plaintiff's RFC in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *See id.*

## 2.    Failure to Consider Certain Medical Evidence

Plaintiff claims that the ALJ failed to consider certain medical evidence, namely the "clinical

findings of two treating physicians, two consultative physicians, and Dr. Fromm," as well as the

results of an MRI performed in February of 1998.  (Dkt. No. 11 at 15.)  She also argues that her

condition did not improve following surgery and physical therapy.  *Id.*  She claims that the ALJ

"either ignored[] or minimized" this evidence while relying on select portions of reports to support

his decision.  *Id.*  Defendant argues that the ALJ "thoroughly evaluat[ed] all of the medical evidence

. . . ."  (Dkt. No. 15 at 17.)  For the following reasons, the Court finds that the RFC determination is

not supported by substantial evidence.

      First, the ALJ stated that he based his RFC determination "upon the evidence of record as a

whole" and then discussed various portions of the medical reports.  (T. at 12-13.)  However, it is

unclear ***how*** the various pieces of evidence cited by the ALJ provide substantial support for his RFC

determination because the ALJ provided no explanation.  *See* S.S.R. 96-8p, 1996 WL 374184, at *7

("RFC assessment must include narrative discussion describing how the evidence supports each

conclusion . . . .")  Moreover, the only evidence cited by the ALJ that contained an opinion as to

Plaintiff's specific functional abilities was a report by Dr. Cole,[13] who found that Plaintiff was

limited moderately in her abilities to stand and walk, and should avoid heavy lifting, repetitive

bending, or excessive climbing.  (T. at 12-13, 329.)  Yet it is unclear how the ALJ translated Dr.

Cole's findings into the RFC determination.  (T. at 16, 329).  *See Curry v. Apfel*, 209 F.3d 117, 123-

24 (2d Cir. 2000) (holding that where treating physician used terms such as "moderate" and "mild"

and that without additional information, ALJ was not permitted to make the necessary inference that

the plaintiff could perform sedentary work).

---

[13]  While the ALJ stated that Dr. Romanace "reports that the claimant can walk for fifteen to twenty minutes, sit for forty-five minutes and lift ten pounds," (T. at 13-14), it appears that Dr. Romanace simply noted Plaintiff's description of her abilities.  (T. at 235.)

Second, the Court notes that the ALJ was required to explain the weight given to the opinions of all other sources, since he did not give controlling weight to the opinion of Plaintiff's treating physician, Dr. Sprague.  *See* 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, *as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.*") (emphasis added). Here, in explaining his RFC determination, the ALJ cited the opinions of Drs. Romanace, Cole, and Fromm.  (T. at 12-14.)  However the extent to which the ALJ relied on these opinions is unclear because he failed to state what weight, if any, he assigned to these opinions.

In light of the foregoing, the Court recommends remand.  On remand the ALJ shall explain how the evidence supports each conclusion as to Plaintiff's RFC, as well as explain what weight, if any, was assigned to the opinions of all other sources if controlling weight is not assigned to the opinion of Plaintiff's treating physician.

### 3. Substitution of Judgment

Plaintiff appears to claim that the RFC determination is not supported by substantial evidence because the ALJ substituted his own judgment by "attaching such significance to the finding of a supposed absence of muscle atrophy and muscle spasm as found by Dr. Cole and Dr. Romanace," (Dkt. No. 18 at 6), and by "ignor[ing] evidence proffered by Dr. Romanace."  (Dkt. No. 19 at 3.)

In the absence of a medical opinion to support an ALJ's determination as to a claimant's ability to perform work, "it is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.  While an ALJ is free to resolve issues of credibility as to

lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him.'" *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *Filocomo v. Chater*, 944 F. Supp. 165, 170 (E.D.N.Y. 1996) ("In the absence of supporting medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.")).  In *Balsamo v. Chater*, the Court found that the ALJ erred when he "stated without citing to any medical opinion that 'there is no atrophy of any muscle groups indicative of disuse for the purpose of avoiding discomfort as one would expect based on the claimant's allegation of constant and totally disabling pain.'  In so finding, the ALJ plainly did not choose between properly submitted medical opinions, but rather improperly set his own expertise against that of physicians who submitted opinions to him." *Balsamo*, 142 F.3d at 81 (some internal quotations omitted).

In this case, while determining Plaintiff's RFC, the ALJ noted that "[d]espite years of purported functional limitation, the claimant has no evidence of muscle atrophy in the lower extremities."  (T. at 12.)  The Court finds that the ALJ improperly made a medical determination by concluding that an absence of muscle atrophy was inconsistent with a finding of disability.  The ALJ simply was not in a position to know whether the absence of this symptom would in fact preclude such a finding.  *See Balsamo*, 142 F.3d at 81; *see also Ruiz v. Apfel*, 98 F. Supp. 2d 200, 208 (D.Conn. 1999) (finding that in calling into question whether listed symptoms support treating physician's opinion, the ALJ essentially substituted own opinion for that of plaintiff's treating physician) (citing *Rosa*, 168 F.3d at 79 (finding that ALJ improperly set own expertise against that of a treating physician and noting that the "ALJ simply was not in a position to know whether the

-29-

absence of muscle spasms would in fact preclude the disabling loss of motion described by [a treating physician] in his assessment.")).  Thus, remand is recommended.

### 4.      Failure to Consider Impairments in Combination with Pain

Plaintiff appears to argue that the RFC determination is not supported by substantial evidence because the ALJ failed to "combine her impairments including pain."  (Dkt. No. 11 at 14; Dkt. No. 28 at 2.)  However, pain, in and of itself, is not a limitation, but rather a symptom which can be associated with limiting RFC factors.  20 C.F.R. §§ 404.1529(a); 416.929(a) ("In determining whether you are disabled, we consider all your symptoms, including pain . . ."); S.S.R. 96-8p, 1996 WL 374184, at * 1 ("[S]ymptoms, including pain, are not intrinsically exertional or nonexertional.  It is the functional limitations or restrictions caused by medical impairments and their related symptoms that are categorized as exertional or nonexertional").  Therefore this claim is unavailing.[14]

### F.      Whether The ALJ Erred in Relying on The Vocational Expert's Testimony

Plaintiff argues that the ALJ erred in relying on the testimony of the vocational expert ("VE").  (Dkt. No. 11 at 23-25.)  Defendant counters that the VE's testimony constitutes substantial evidence supporting the ALJ's decision.  (Dkt. No. 15 at 20.)

Because the Court is recommending remand for the ALJ, *inter alia*, to reevaluate Plaintiff's RFC and to develop the record, the Court recommends remand on this issue as well.  Upon remand, the ALJ shall obtain the opinion of a VE if Plaintiff's nonexertional limitations present significant limitations.  *See Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986) (holding that if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional

---

[14]  To the extent that Plaintiff is claiming that the ALJ improperly assessed her subjective complaints, the Court already addressed this issue.  *See supra* Part V.D.

-30-

limitations" the application of the grids is inappropriate).

   **G.   Whether The Court Should Remand The Matter Pursuant to Sentence Six of 42 U.S.C. § 405(g) in Light of New and Material Evidence**

   The Social Security Act permits remand for review of new and material evidence pursuant to the sixth sentence of 42 U.S.C. § 405(g), which provides in pertinent part that "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  42 U.S.C. § 405(g); *see Lisa v. Sec'y of Health and Human Servs.*, 940 F.2d 40, 42 (2d Cir.1991).  In order to justify remand under this provision, the plaintiff must show (1) that the proffered evidence is new and not merely cumulative of what is already in the record, (2) that the evidence is material, i.e., both relevant to the claimant's condition during the time period for which benefits were denied and probative, and (3) good cause for failing to present the evidence earlier.  *Lisa*, 940 F.2d at 43 (citations omitted)).  The concept of materiality also requires a reasonable possibility that the new evidence would have influenced the Secretary to decide a claimant's application differently.  *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988).  The concept of good cause exists where the evidence "surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the pendency of that proceeding."  *Lisa*, 940 F.2d at 44.

   In this case, Plaintiff submitted to the Court a favorable decision rendered on September 22, 2004 by ALJ Neil R. Ross.  (Dkt. No. 19 at Exh. 1.)  ALJ Ross found Plaintiff disabled as of January 29, 2002.  *Id.* at 7.  Plaintiff argues that ALJ Ross's decision constitutes new and material evidence requiring remand pursuant to sentence six of 42 U.S.C. § 405(g).  *Id.* at 1-2.  Defendant argues that

remand is not required because the decision is not material.  (Dkt. No. 20 at 3.)  Defendant also

argues that ALJ Ross's decision would not have influenced ALJ Stephan to decide Plaintiff's claim

differently and that the evidence on which ALJ Ross relied post-dated ALJ Stephan's decision.[15]

(Dkt. No. 20 at 3.)

Regarding whether ALJ Ross's decision is new, the Court finds that ALJ Ross's decision is

new and not merely cumulative of what is already in the record.  Regarding whether Plaintiff had

good cause for failing to present the decision earlier, the Court finds that Plaintiff had good cause

because it was rendered after ALJ Stephan's decision.

Regarding whether ALJ Ross's decision is material, as noted, to constitute material evidence,

the evidence must be both relevant to the claimant's condition during the time period for which

benefits were denied and probative.  *Lisa*, 940 F.2d at 43.  Here, on January 25, 2002, ALJ Stephan

found that Plaintiff was not disabled.  (T. at 10-17.)  On January 29, 2002, Plaintiff protectively filed

a new application for SSI benefits.  (Dkt. No. 19, Exh. 1 at 1.)  On September 22, 2004, ALJ Ross

found Plaintiff disabled as of her protective filing date of January 29, 2002.  *Id.*  Clearly, the two

decisions encompassed different time periods and different applications.  The two decisions also

addressed some different alleged impairments and, to a great extent, different medical evidence.

Moreover, ALJ Ross noted in his decision that he "will not address the issue of 'disability' in

connection with the claimant's prior [DIB] and [SSI] applications filed on February 7, 1995 since

that issue is presently before the U.S. District Court."  (Dkt. No. 19, Exh. 1 at 2.)  For these reasons,

---

[15]  The Court notes that it is unclear whether a subsequent favorable ALJ decision can constitute "evidence" for purposes of a sentence six remand.  *See Lopez v. Barnhart*, No. 01 Civ. 7516, 2002 WL 1822739, at *3 n.2 (S.D.N.Y. Aug. 8, 2002) (noting that it was unclear whether a second ALJ decision can be considered evidence for the purposes of a sentence six remand, but declining to reach the issue where there was no dispute between the parties).

the Court finds that ALJ Ross's decision is not "material" because it is not relevant to Plaintiff's condition during the time period for which benefits were denied.  *See Lisa*, 940 F.2d at 43; *see also Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (holding that the district court did not err in denying a plaintiff's motion to remand his initial application in light of a later award of benefits based on his second application because the second application involved different medical evidence, a different time period, and a different age classification).  Therefore the Court declines to recommend remand pursuant to sentence six of 42 U.S.C. § 405(g).

> ### H.   Scope of Remand

Plaintiff argues that the Court should recommend remand solely for the calculation of benefits or, in the alternative, if the Court recommends remand for further proceedings, "the Court should order the Commissioner not to reopen the later application and revis[e] the award of benefits."  (Dkt. No. 23 at 9.)  Defendant argues that remand is not required in this case, but if the Court finds that ALJ Ross's decision constituted new and material evidence warranting remand, the Court should recommend remand for consideration of the evidence and not for the award of benefits. (Dkt. No. 20 at 2.)

"'When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the Commissioner for further development of the evidence.'"  *Pratts*, 94 F.3d at 39 (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)); *see also Sobolewski*, 985 F. Supp. at 314.  In other situations, where a court had "no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits.[ ]"  *Rosa*, 168 F.3d at 83 (footnote omitted) (citing *Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998)).  Here, remand solely

-33-

for the calculation of benefits would be inappropriate because there are gaps in the record due to, *inter alia*, missing documents.

The Court notes the length of time this matter has been pending, as well as that delay occurred because the administrative transcript was not complete.  Nevertheless, "absent sufficient evidence of disability, delay alone is not a valid basis for remand solely for calculation of benefits." *Brown v. Comm'r of Soc. Sec.*, Civ. No. 00-1147, 2005 WL 1745655, at *2 (N.D.N.Y. June 30, 2005) (Sharpe, D.J.) (citing *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996)).  In this case, the Court is not convinced that the present record provides sufficient evidence of disability which would justify remand for calculation of benefits.  Accordingly, the Court recommends remand for further proceedings.[16]

**WHEREFORE**, it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[17] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a),

---

[16]  To the extent that Plaintiff requests that the Court issue an order preventing the Commissioner from "reopening" her "second favorable application" (Dkt. No. 23 at 9-10), the Court denies this request inasmuch as it relates to an application that is not before the Court at this time.

[17]  Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2006).

6(e).

Dated:  June 29, 2007
      Syracuse, New York

                            George H. Lowe
                            United States Magistrate Judge

-35-